# Exhibit C

# Fraudulent Misrepresentation of U.S. Constitution by Supreme Court Justices to Assert Presidents Possess Immunity

# Trump v. United States, 80 U.S. 335 (1871)

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.*, 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## TRUMP *v.* UNITED STATES

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 23–939. Argued April 25, 2024—Decided July 1, 2024

A federal grand jury indicted former President Donald J. Trump on four counts for conduct that occurred during his Presidency following the November 2020 election. The indictment alleged that after losing that election, Trump conspired to overturn it by spreading knowingly false claims of election fraud to obstruct the collecting, counting, and certifying of the election results. Trump moved to dismiss the indictment based on Presidential immunity, arguing that a President has absolute immunity from criminal prosecution for actions performed within the outer perimeter of his official responsibilities, and that the indictment's allegations fell within the core of his official duties. The District Court denied Trump's motion to dismiss, holding that former Presidents do not possess federal criminal immunity for any acts. The D. C. Circuit affirmed. Both the District Court and the D. C. Circuit declined to decide whether the indicted conduct involved official acts.

*Held*: Under our constitutional structure of separated powers, the nature of Presidential power entitles a former President to absolute immunity from criminal prosecution for actions within his conclusive and preclusive constitutional authority. And he is entitled to at least presumptive immunity from prosecution for all his official acts. There is no immunity for unofficial acts. Pp. 5–43.

(a) This case is the first criminal prosecution in our Nation's history of a former President for actions taken during his Presidency. Determining whether and under what circumstances such a prosecution may proceed requires careful assessment of the scope of Presidential power under the Constitution. The nature of that power requires that a former President have some immunity from criminal prosecution for official acts during his tenure in office. At least with respect to the

President's exercise of his core constitutional powers, this immunity must be absolute. As for his remaining official actions, he is entitled to at least presumptive immunity. Pp. 5–15.

(1) Article II of the Constitution vests "executive Power" in "a President of the United States of America." §1, cl. 1. The President has duties of "unrivaled gravity and breadth." *Trump* v. *Vance*, 591 U. S. 786, 800. His authority to act necessarily "stem[s] either from an act of Congress or from the Constitution itself." *Youngstown Sheet & Tube Co.* v. *Sawyer*, 343 U. S. 579, 585. In the latter case, the President's authority is sometimes "conclusive and preclusive." *Id.*, at 638 (Jackson, J., concurring). When the President exercises such authority, Congress cannot act on, and courts cannot examine, the President's actions. It follows that an Act of Congress—either a specific one targeted at the President or a generally applicable one—may not criminalize the President's actions within his exclusive constitutional power. Neither may the courts adjudicate a criminal prosecution that examines such Presidential actions. The Court thus concludes that the President is absolutely immune from criminal prosecution for conduct within his exclusive sphere of constitutional authority. Pp. 6–9.

(2) Not all of the President's official acts fall within his "conclusive and preclusive" authority. The reasons that justify the President's absolute immunity from criminal prosecution for acts within the scope of his exclusive constitutional authority do not extend to conduct in areas where his authority is shared with Congress. To determine the President's immunity in this context, the Court looks primarily to the Framers' design of the Presidency within the separation of powers, precedent on Presidential immunity in the civil context, and criminal cases where a President resisted prosecutorial demands for documents. P. 9.

(i) The Framers designed the Presidency to provide for a "vigorous" and "energetic" Executive. The Federalist No. 70, pp. 471–472 (J. Cooke ed. 1961) (A. Hamilton). They vested the President with "supervisory and policy responsibilities of utmost discretion and sensitivity." *Nixon* v. *Fitzgerald*, 457 U. S. 731, 750. Appreciating the "unique risks" that arise when the President's energies are diverted by proceedings that might render him "unduly cautious in the discharge of his official duties," the Court has recognized Presidential immunities and privileges "rooted in the constitutional tradition of the separation of powers and supported by our history." *Id.*, at 749, 751, 752, n. 32. In *Fitzgerald*, for instance, the Court concluded that a former President is entitled to absolute immunity from "damages liability for acts within the 'outer perimeter' of his official responsibility." *Id.*, at 756. The Court's "dominant concern" was to avoid "diversion of the President's attention during the decisionmaking process caused by needless