UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**DENNIS G. DEPPE,**

**Plaintiff,**

**v.** **Case No. 6:24-cv-2098-CEM-NWH**

**JOHN C. VETTER, LINDA E. COCO, JEFFREY S. WEISS, SANDRA M. SOVINSKI, SVETLANA S. SHTROM, YOUNDY C. COOK, ELIZABETH A. KLONOFF, KAREN C. KLINE, ROBERT A. SWEETAPPLE, ALEN H. HSU, JOHN MARCUS BUSTAMANTE, JOHN M. TABODA, JOE F. SOUTHRON, ROBIN S. FORET, LATIKA K. EIFERT, DEBORAH V. VAN VECHTEN, JEFFREY M. SHAINLINE, MILTON M. FENG, PAUL R. PINSUKANJANA, MARK W. BERANEK, CHARLES B. KUZNIA, HANNIBAL M. WARE, RON D. DESANTIS, MELINDA M. MIGUEL, ASHLEY M. MOODY, ANGELA M. GALLAGHER, BAHAA E. SALEH, SABINE M. O'NEAL, ROBERT J. TAFT, TINA M. MAIER, MARK S. SOLOMON, KEVIN A. KEELING, MATT H. KIM, NOREN PAN, FRED A. KISH, MARTIN J. REPETTO, JOHN DALLESASSEE, RASHID M. BASHIR, SUSAN A.**

**MARTINIS, NICHOLAS J. STORK, BRENDA L. STORK, LARRY J. STORK, and WILLIAM J. HARROD,**

**Defendants.**

__________________________________/

## ORDER

THIS CAUSE is before the Court on *sua sponte* review of the Third Amended Complaint (Doc. 338). This cause is also before the Court on Plaintiff's Motion for Disqualification (Doc. 343) and related Objection (Doc. 342) and on Plaintiff's Motion to Stay (Doc. 345). For the reasons set forth below, the Motions will be denied and this matter will be dismissed with prejudice.

### I. MOTION TO DISQUALIFY

Before the Court addresses any substantive motions, it will briefly address Plaintiff's most recent efforts to disqualify the undersigned. (*See generally* Previous Motions to Disqualify, Doc. Nos. 283, 286, 334). Plaintiff has now filed an "Objection" purporting to object to the Court's prior Orders under Federal Rule of Civil Procedure 46. (Doc. 342 at 1 (objecting to Doc. Nos. 312, 335, and 336)). As an initial matter, Rule 46 addresses objections made at trial and is inapplicable here. There is no mechanism to "object" to a district judge's order. Nevertheless, the thrust of the Objection is focused on the undersigned's denial of Plaintiff's previous requests to recuse. To the extent Plaintiff seeks reconsideration of those orders, the

arguments overlap with the Motion for Disqualification and will be addressed together.[1]

Pursuant to 28 U.S.C. § 455(a), a judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The Court must determine "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988).

Plaintiff complains that the undersigned has committed "fraud on the U.S. Constitution, breaching the terms of his most important contract, and placing illegitimate 10-month stays into this proceeding." (Doc. 342 at 3; *see also* Doc. 343 at 6 (arguing that "the 10-month stay in this third proceeding" requires disqualification)).[2] Plaintiff also asserts that the previous dismissal of the judicial defendants in this case "uses the fraudulent assertions of immunity that violate the U.S. Constitution." (Doc. 343 at 6; Doc. 342 at 5–6 (complaining of "fraudulent assertions of immunity")). Plaintiff elaborates on his arguments, but these two decisions underpin them all. Plaintiff is certainly free to appeal decisions of this Court, but as has been explained numerous times, mere legal decisions by the Court

[1] To the extent Plaintiff seeks reconsideration of the prior orders for any other reason, Plaintiff has failed to articulate a basis to do so.

[2] For citations to docket entries, all pincites are to the electronic filing page number.

are not a basis for recusal. The Objection, construed as a motion for reconsideration, and the Motion for Disqualification will be denied.

## II. Background

Plaintiff alleges a sweeping conspiracy apparently aimed at stealing his laser technology. (*See generally* Doc. 338). This conspiracy purportedly involves individuals and institutions ranging from colleagues and graduate students at three universities; private sector businesses; the military; Florida and federal government officials; seemingly every attorney Plaintiff has ever hired, consulted with, or who appeared as opposing counsel in litigation;[3] Plaintiff's family members; individuals with whom Plaintiff appears to have had romantic, or at least physical, involvement; and medical personnel at a psychiatric facility. (*See generally id.*). Beyond that general summary, it is difficult to understand Plaintiff's 801-page, 4310 paragraph Third Amended Complaint, which asserts claims in eleven "causes of action" that each contain multiple counts, totaling approximately 233 counts[4] against 43 Defendants, and which includes allegations spanning over thirty years, (*id.* at 18 (discussing events that allegedly occurred as far back as 1993). (*See generally id.*).

---

[3] Plaintiff also included the presiding judges in this conspiracy, but those claims were dismissed previously because the judges are entitled to judicial immunity. (*See generally* R. & R., Doc. 291; Oct. 22, 2025 Order, Doc. 312).

[4] Given the voluminous filing, it is difficult to determine the precise number of counts because Plaintiff begins renumbering them in each cause of action.

This is also the fourth case brought by Plaintiff involving the same or related allegations. Plaintiff is a former employee of the University of Central Florida ("UCF"). (*Id.* at 21). After his termination, Plaintiff sued UCF for alleged violations of Florida's public sector Whistle-Blower Act. (*Id.* at 6); *Deppe v. Univ. of Cent. Fla. Bd. Of Trs. (Deppe I)*, 2019-CA-015042 (Fla. 9th Cir. Ct.).[5] *Deppe I* was based on Plaintiff's complaints about UCF's alleged violations of various rules and regulations. *See generally Deppe I*, Compl. *Deppe I* was voluntarily dismissed without prejudice in 2021. *Deppe I*, May 21, 2021 Order.

While *Deppe I* was ongoing, Plaintiff filed the first of three lawsuits in this Court, *Deppe v. Univ. of Cent. Fla. Bd. Of Trs. (Deppe II)*, No. 6:20-cv-1588-WWB-DCI; (*see also* Doc. 338 at 6). In *Deppe II*, Plaintiff's company sdPhotonics was added as a co-plaintiff. *Deppe II*, Am. Compl., Doc. 17, at 1. The dispute in *Deppe II* focused on the ownership of laser technology intellectual property, including allegations of false and misleading statements made to the U.S. Patent and Trademark Office ("PTO"). *Id.* at 6–12. *Deppe II* also included whistleblower allegations that overlapped with *Deppe I*. *Id.* at 9. *Deppe II* was voluntarily dismissed

[5] Plaintiff makes many allegations regarding these related lawsuits, and they appear to be central to his allegations here. Additionally, it is "recognized that a 'court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (quotation omitted).

without prejudice by Plaintiff on October 19, 2020, while *Deppe I* was still pending. *Deppe II*, Notice of Vol. Dismissal, Doc. 23.

In 2023, Plaintiff took a new tactic and, proceeding *pro se* for the first time, sued two UCF employees, Sandra Sovinski and Svetlana Shtrom, individually. *Deppe v. Sovinski (Deppe III)*, No. 6:23-cv-1484-JSS-RMN. The allegations in *Deppe III*, like *Deppe II*, largely involved the rights to the laser intellectual property and also included allegations relating to the purported whistleblower complaints in *Deppe I*. *See generally Deppe III*, Compl., Doc. 1. *Deppe III* is also where Plaintiff developed his theory of an "organized government crime scheme involving bribery and intellectual property theft led by the U.S. military and three universities." *Id.* at 3.

Plaintiff's original Complaint in *Deppe III* was dismissed as a shotgun pleading. *Deppe III*, Aug. 4, 2023 Order, Doc. 4. Plaintiff filed an Amended Complaint, *Deppe III*, Doc. 10, and then a Second Amended Complaint, *Deppe III*, Doc. 96. In these pleadings, Plaintiff continued to allege and expand on the allegations of an organized government crime scheme, but still only asserted claims against Sovinski and Shtrom. The federal law claims in *Deppe III* were dismissed with prejudice because Sovinski and Shtrom were entitled to qualified immunity;[6]

[6] In light of the *Deppe III* dismissal, it appears that the claims brought against Sovinski and Shtrom here are barred by the doctrine of res judicata.

the Court declined to exercise supplemental jurisdiction over the remaining state law claims and dismissed those without prejudice. *See generally Deppe III*, Feb. 18, 2025 Order, Doc. 115. While *Deppe III* was still pending, Plaintiff filed the instant case.

Here, Plaintiff amended once as of right, (First Am. Compl., Doc. 56), and then was granted leave to amend a second time, (Second Am. Compl., Doc. 205). The United States Magistrate Judge issued a Report and Recommendation ("R&R," Doc. 291), recommending that the Second Amended Complaint be dismissed with prejudice as to the judicial defendants on the basis of judicial immunity and otherwise be dismissed without prejudice as a shotgun pleading. (*See generally id.*). The Court adopted the R&R and granted Plaintiff leave to file a Third Amended Complaint that cured the shotgun pleading issues and otherwise complied with the Court's directives. (*See generally* Oct. 22, 2025 Order, Doc. 312; *see also generally* Sept. 28, 2026 Order, Doc. 335 (denying as moot Plaintiff's motion to amend because leave to amend had already been granted)).

The two most common concepts in the Third Amended Complaint appear to be those recycled from Plaintiff's previous litigation: the dispute with UCF over ownership of the laser intellectual property, including allegations that UCF employees submitted false or misleading statements to the PTO, (*see, e.g.*, Doc. 338 at 30–31, 47–55, 59–60, 93–95); and the whistleblower allegations and proceedings in *Deppe I*, (*see, e.g.*, *id.* at 32, 34–35, 40–43), however, the focus here appears to

be more on Plaintiff's dissatisfaction with the attorneys' actions in that case than the underlying claims, (*see, e.g.*, *id.* at 56–57, 66–71, 86–89).

Plaintiff also alleges a "plagiarism scheme" involving professors at the University of Texas and University of Illinois, (*id.* at 19–20), and a "identity theft and tax fraud" scheme between the University of Texas and the military, (*id.* at 33, 101–04). In this theme, Plaintiff repeatedly refers to some sort of nebulous conspiracy between the three referenced universities and the military. For example, Plaintiff alleges that the military was monitoring his work. (*id.* at 21–22), and that "[t]he military and universities became so desperate to learn about" Plaintiff's laser technology that "they used women to have sex with [Plaintiff] to learn about his research," (*id.* at 23). But then, Plaintiff jumps back in time, alleging that this scheme involving women started along with the previous "plagiarism scheme[]." (*Id.*).

Plaintiff also includes allegations related to various government investigations, or lack thereof. Plaintiff references complaints he filed with the Small Business Administration ("SBA"), and "[u]pon information and belief" alleges that it resulted in Plaintiff being placed under FBI surveillance. (*Id.* at 62, 64, 102). Plaintiff further complains that when Governor Ron Desantis took office, he and his administration failed to take action on an investigation into UCF. (*Id.* at 38–40). Similarly, Plaintiff complains that then-Florida Attorney General Ashley Moody declined to investigate Plaintiff's complaints. (*Id.* at 85).

Plaintiff's allegations culminate in claims of "stalking" during the Covid-19 pandemic in 2020, alleging that he was confronted by "maskless stalkers" who "would enter [Plaintiff's] personal space for which the stalkers would be contagious, and angrily demand [Plaintiff] remove his mask or take off his gloves, because covid was 'not real.'" (*Id.* at 72). Plaintiff asserts, without any supporting factual allegations, that this was a scheme concocted by "the military and universities." (*Id.* at 73). Plaintiff then alleges in quick succession that he was in contact with various individuals in the industry and told them he was being stalked by the military, and each had varying reactions, including asking Plaintiff if he ever had sex with a sixteen year old, asking Plaintiff to meet him in a vacant house, and distancing themselves. (*Id.* at 73–75).

At this time, Plaintiff apparently sought help from his nephew, Nicholas Stork. (*Id.* at 77). Plaintiff explained that he believed he was being stalked by the military that was working with Donald Trump, by UCF, and by the FBI. (*Id.* at 78). Stork and his wife took Plaintiff to a psychiatric institution, where, with the assistance of another acquaintance Deborah Van Vechten, Plaintiff was involuntarily committed for six days. (*Id.* at 78–79). Plaintiff details his experience in the facility, including being exposed to "covid risks" from others not wearing masks, being "forced to attend supposed 'group' sessions" that Plaintiff believed were staged

meetings, the Medical Director[7] attempting to diagnose him with bipolar disorder, getting food poisoning, and being intimidated by the other patients. (*Id.* at 79–81). When Plaintiff was released, he was picked up by Stork, Stork's wife, Plaintiff's sister, and his brother-in-law. (*Id.* at 82). Plaintiff alleges that these individuals worked with the military and UCF in this process. (*Id.* at 83).

These sorts of stalking allegations dominate the remainder of Plaintiff's factual allegations, asserting that after contacting UCF in 2022 about intellectual property issues, "he became heavily stalked using high power directed energy RF transmitters used by the military and police, and food and water poisoning linked to local law enforcements in Florida," (*id.* at 105), and that he "became stalked so heavily and repeatedly with assaults and batteries using the military and police technologies and tactics that he was forced to leave the U.S. for his physical safety." (*Id.* at 107).

Although the Court has attempted to organize the Third Amended Complaint's concepts and themes, the ninety-two pages of factual allegations are characterized by whiplash-inducing topic changes, vague connections between confusing concepts, and detailed minutiae that are not obviously related to the surrounding allegations. (*See id.* at 18–110). Plaintiff also dedicates large sections

[7] (*See* Doc. 338 at 16 (alleging that Martin Repetto is the Medical Director at the psychiatric institution where Plaintiff was confined, Pavilion Behavioral Health System)).

of the Third Amended Complaint to block quoting statutory authority and making legal argument about equitable tolling. (*See, e.g.*, *id.* at 52–54, 110–13).

Plaintiff then alleges eleven "causes of action," where he sets out a category of violation, and then within those causes of action alleges multiple counts. (*Id.* at 113–798). For example, Plaintiff's Fourth Cause of Action is brought pursuant to 42 U.S.C. § 1983 for violations of his Fourteenth Amendment due process rights relating to *Deppe I* and the PTO proceedings. (*Id.* at 210, 212). At the outset of this "cause of action," Plaintiff spends a page setting out legal authority. (*Id.* at 211). He then brings twenty-four "counts" within that cause of action, each against a different Defendant. (*Id.* at 211–289). In each count, Plaintiff incorporates hundreds of paragraphs of allegations and multiple exhibits, and then spends several pages per count making additional factual allegations that are repetitive and overlap with those in the factual background. (*Id.*). Additionally, each count, while titled as though they are aimed at a single Defendant, includes many allegations regarding other Defendants' actions. (*Id.*). This pattern is repeated for each "cause of action" in the Third Amended Complaint. (*Id.* at 113–798).

## III. SHOTGUN PLEADING

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "The failure to identify claims with sufficient clarity to enable the defendant to frame a

responsive pleading" violates Rule 8 and "constitutes a 'shotgun pleading.'" *Beckwith v. Bellsouth Telecomms. Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005) (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1029–30 (11th Cir. 2001)); *Echenique v. Hamilton Hosp.*, No. 25-14222, 2026 U.S. App. LEXIS 19483, at *5 (11th Cir. July 2, 2026). Shotgun pleadings also "waste scarce judicial resources, 'inexorably broaden[] the scope of discovery,' 'wreak havoc on appellate court dockets,' and 'undermine[] the public's respect for the courts.'" *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (quotation omitted). "A district court has the 'inherent authority to control its docket and ensure the prompt resolution of lawsuits,' which includes the ability to dismiss a complaint on shotgun pleading grounds." *Id.* (quotation omitted).

As an initial matter, Plaintiff's 801-page Third Amended Complaint, which incorporates 117 pages of exhibits, (Doc. 338-1), and includes repetitive, confusing, and unnecessary allegations clearly violates Rule 8's "short and plain statement" requirement. Additionally, the Eleventh Circuit has identified with more specificity four types of shotgun pleadings. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015). The Third Amended Complaint falls squarely into the second type: "a complaint that . . . is . . . replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id*. at 1322.

The allegations in the Third Amended Complaint consist of confusing threads that Plaintiff attempts, and fails, to weave into a cohesive story. Plaintiff's allegations jump from concept to concept, loop back around on themselves, make vague, conclusory connections between people and events without clear explanation, and spend pages block quoting statutes and making legal argument. The Third Amended Complaint also includes foundationless accusations of an ever-expanding conspiracy involving everyone from former colleagues, university administrators, multiple attorneys—both those hired by Plaintiff and opposing counsel—the Governor of Florida, the military, and Plaintiff's own family, without any coherent factual basis. Despite his thousands of paragraphs of allegations, it is unclear what, precisely, Plaintiff is alleging and how each narrative relates to the others. *See Boatman v. Sawyer*, No. 20-12189, 2021 U.S. App. LEXIS 30163, at *3, 6 (11th Cir. Oct. 7, 2021) (affirming the district court's determination that the complaint was a shotgun pleading where it contained, among other things, "a confusing mixture of legal arguments, conclusory accusations, vague statements, relevant facts, and irrelevant facts.").

Plaintiff's Second Amended Complaint suffered the same shotgun pleading issue, which he was advised of at length. (Doc. 291 at 11–14).[8] Instead of clarifying

[8] Plaintiff was also aware of the shotgun pleading rules from the first dismissal in *Deppe II*.

his claims into a concise statement, Plaintiff nearly doubled the length of the pleading and made it more confusing. In such a situation, where Plaintiff was given "notice of the specific defects" in his Second Amended Complaint, and the Third Amended Complaint "remained lengthy, confusing, conclusory, and difficult to decipher," it is due to be dismissed with prejudice. *Echenique*, 2026 U.S. App. LEXIS 19483, at *6 ("Because [the *pro se* plaintiff] received a meaningful chance to amend and failed to correct the same pleading defects, the district court acted within its discretion in dismissing the complaint with prejudice.").

## IV. Motion to Stay

Like Plaintiff's Third Amended Complaint, his Motion to Stay is difficult to follow. It appears that Plaintiff may be asking for a stay of the review of his Third Amended Complaint so that he can supplement the pleading or seek some other type of relief to address additional claims he believes he has against the current Defendants as well as judges and attorneys. (*See generally* Doc. 345). To the extent Plaintiff seeks a stay of the Court's review of the Third Amended Complaint, he has not provided good cause for such a stay. To the extent Plaintiff is asking to be permitted to supplement, the Court will construe it as a motion to amend.

Under Federal Rule of Civil Procedure 15, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "The district court, however, need not allow an amendment (1) where there has been undue delay,

bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (per curiam) (quotation omitted).

As explained previously, Plaintiff has repeatedly failed to cure deficiencies by amendment. The Third Amended Complaint is Plaintiff's fourth attempt to state a claim in this case, not to mention his previous litigation that encompassed at least portions of the current allegations. Moreover, amendment would be futile. First, despite being given specific instructions, Plaintiff persists in filing a shotgun pleading; there is no reason to believe additional amendment would cure the shotgun issue. Second, Plaintiff asserts that he wants to amend based on an alleged "criminal syndicate," (Doc. 345 at 1), involving judges and attorneys, (*id.* at 1–2), the previous stay of deadlines in this case, (*id.* at 2), the Federalist Society, (*id.* at 3–4), and the U.S. Supreme Court justices, (*id.* at 4). These statements are incoherent and more confusing than those in the Third Amended Complaint. Any amendment would be futile. The Motion to Stay will be denied.

## V. CONCLUSION

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. Plaintiff's Motion for Disqualification (Doc. 343) and related Objection (Doc. 342), construed as a Motion for Reconsideration, are **DENIED**.
2. Plaintiff's Motion to Stay (Doc. 345) is **DENIED**.
3. Plaintiff's Third Amended Complaint is **DISMISSED with prejudice**.
4. The Clerk is directed to close this case.

**DONE** and **ORDERED** in Orlando, Florida on October 27, 2026.

CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party