# Exhibit A

# Bradley v. Fisher, 80 U.S. 335 (1872)

# Bradley v. Fisher

*Bradley v. Fisher*

Supreme Court of the United States · Decided April 18, 1872 · Dayis, Clifford, Field

80 U.S. 335; 20 L. Ed. 646; 13 Wall. 335; 1871 U.S. LEXIS 1345 *(United States Reports)*

---

## OPINION OF THE COURT

**Mr. Justice FIELD**

delivered the opinion of the court.

In 1867, the plaintiff was a member of the bar of the Supreme Court of the District of Columbia, and the defendant was one of the justices of that court. In June, of that year, the trial of one John H. Suratt, for the murder of Abraham Lincoln, was commenced in the Criminal Court of the District, and was continued until the tenth of the following August, when the jury were discharged in consequence of their inability to agree upon a verdict. The defendant held that court, presiding at the trial of Suratt from its commencement to its close, and the plaintiff was one of the attorneys who defended the prisoner. Immediately upon the discharge of the jury, the court, thus held by the defendant, directed an order to be entered on its records striking the name of the plaintiff from the roll of attorneys practicing in that court. The order was accompanied by a recital that on the second of July preceding, during the progress of the trial of Suratt, immediately after the court had taken a recess for the day, as the presiding judge was descending from the bench, he had been accosted in a rude and insulting manner by the plaintiff, charging him with having offered the plaintiff a series of insults from the bench from the commencement of the trial; that the judge had then disclaimed any intention of passing any insult whatever, and had assured the plaintiff that he entertained for him no other feelings than those of respect, but that the plaintiff, so far from accepting this explanation, or disclaimer, liad threatened the judge with personal chastisement.

The plaintiff appears to have regarded this order of the Criminal Court as an order disbarring him from the Supreme Court of the District; and the whole theory of the *345present action proceeds upon that hypothesis. The declaration in one count describes the Criminal Court as one of the branches of the Supreme Court, and in the other count represents the order of the Criminal Court as an order removing the plaintiff" from the office of an attorney-at-law in the Supreme Court of the District. And it is for the supposed removal from that court, and the assumed damages consequent thereon, that the action is brought.

Yet the Criminal Court of the District was at that time a separate and independent court, and as distinct from the Supreme Court of the District as the Circuit Court is distinct from the Supreme Court of the United States. Its distinct and independent character was urged by the plaintiff", and successfully urged, in this court, as ground for relief against the subsequent action of the Supreme Court of the District., based upon what had occurred in the Criminal Court. And because of its distinct and independent character, this court held that the Supreme Court of the District possessed no power to punish the plaintiff" on- account of contemptuous conduct and language before the Criminal Court, or in the presence of its judge. By this decision, which was rendered at the December Term of 1868,* the groundwork of the present action of the plaintiff" is removed. The law which he successfully invoked, aud which protected him when he complained of the action of the Supreme Court of the District, must now equally avail for the protection of the defendant, when it is attempted to give to the Criminal Court a position and power which were then denied. The order of the Criminal Court, as it was. then constituted, was not an order of the Supreme Court of the District, nor of one of the'branches of that coui*t. It did not, for we know that in law it could not, remove the plaintiff* from the office of an attorney of that court, nor affect his right to practice therein.

This point is distinctly raised by the special plea of the defendant, in which he sets up that at the time the order *346complained of was made, he was regularly and lawfully holding the Criminal Court of the District, a court of record, having general jurisdiction for the trial of crimes and of-fences arising within the District, and that the order complained of was au order of the Criminal Court, made by him in the lawful exercise and performance of his authority and duty as its presiding justice, for official misconduct of the plaintiff as one of its attorneys, in his presence; and upon this plea the plaintiff joined issue.

The court below, therefore, did not err in excluding the order of removal as evidence in the cause, for the obvious reason that it did not establish, nor tend to establish, the removal of the plaintiff by any order of the defendant, or of the court held by him, from the bar of the Supreme Court of the District. And the refusal of the court below to admit evidence contradicting the recitals in that order, could not be the ground of any just exception, when the order itself was not pertinent to any issue presented. Nor is this conclusion affected by the act of Congress passed in June, 1870, nearly three years after the order of removal was made, and nearly two years after the present action was commenced, changing the independent character of the Criminal Court and declaring that its judgments, decrees, and orders should be deemed the judgments, decrees, and orders of the Supreme Court of the District.* If the order of removal acquired from this legislation a wider scope and operation than it possessed when made, the defendant is not responsible for it. The original act was not altered. It was still an order disbarring the plaintiff only from the Criminal Court, and any other consequences are attributable to the action of Congress, and not to any action of the defendant.

But this is not all. The plea, as will be seen from our statement of it, not only sets up that the order of which the plaintiff complains, was an order of the Criminal Court, but that it was made by the defendant in the lawful exercise and performance of his authority and duty as its presiding *347justice. In other words, it sets up that the order for the entry of which the suit is brought, was a judicial act, done by the

defendant as the presiding justice of a court of general criminal jurisdiction. If such were the character of the act, and the jurisdiction of the court, the defendant cannot be subjected to responsibility for it in a civil action, however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff. For it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself. Liability to answer to every one wlio might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful. As observed by a distinguished English judge, it would establish the weakness of judicial authority in a degrading responsibility.*

The principle, therefore, which exempts judges of courts of superior or general authority from liability in a civil action for acts done by them in the exercise of their judicial functions, obtains in all countries where there is any well-ordered system of jurisprudence. It has been the settled doctrine of the English courts for many centuries, and has never been denied, that we are aware of, in the courts of this country. It has, as Chancellor Kent observes, " a deep root in the common law."†

Nor can this exemption of the judges from civil liability be affected by the motives with which their judicial acts are performed. The purity of their motives cannot in this way be the subject of judicial inquiry. This was adjudged in the case of *Floyd and Barker,* reported by Coke, in 1608,‡ where it was laid down that the judges of the realm could not be drawn in question for any supposed corruption im*348peaching the verity of their records, except before the king himself, and it was observed that if they were required to answer otherwise, it would " tend to the scandal and subversion of all justice, and those who are the most sincere, would not be free from continual calumniations."

_ The truth of this latter observation is manifest to all persons having much experience with judicial proceedings in the superior courts. Controversies involving not merely great pecuniary interests, but the liberty and character of the parties, and consequently exciting the deepest feelings, are being constantly determined in those courts, iu which there is great conflict in the evidence and great doubt as to the law which should govern their decision. It is this class of casos which impose upon the judge the severest labor, and often create in his mind a painful sense of responsibility. Yet it is precisely in this class of cases that the losing party feels most keenly the decision against him, and most readily accepts anything but the soundness of the decision in explanation of the action of the judge. Just in proportion to the strength of his convictions of the correctness of his own view of the case is he apt to complain of the judgment against him, and from complaints of the judgment to pass to the ascription of improper motives to the judge. When the controversy involves questions affecting large amounts of property or relates to a matter of general public concern, or touches the interests of numerous parties, the disappointment occasioned by an adverse decision, often finds vent in imputations of this character, and from the imperfection of human nature this is hardly a subject of wonder. If civil actions could be maintained in such cases against the judge, because the losing party should see fit to allege in his complaint that the acts of the judge were done with partiality, or maliciously, or corruptly, the protection essential to judicial independence would

be entirely swept away. Few persons sufficiently irritated to institute an action against a judge for his judicial acts would hesitate to ascribe any character to the acts which would be essential to the maintenance of the action.

*349If upon such allegations a judge could be compelled to answer in a civil action for his judicial acts, not only would his office be degraded and his usefulness destroyed, but he would be subjected for his protection to the necessity of preserving a complete record of all the evidence produced before him in every litigated case, and of the authorities cited and arguments presented, in order that he might be able to show to the judge before whom he might be summoned by the losing party—and that judge perhaps one of. an inferior jurisdiction—that he had decided as he did with judicial integrity; and the second judge would be subjected to a similar burden, as he in his turn might also be held amenable by the losing party.

Some just observations on this head by the late Chief Justice Shaw, will be found in *Pratt* v. *Gardner,*[*] and the point hero was adjudged in the recent case of *Fray* v. *Blackburn,*[†] by the Queen's Bench of England. One of the judges of that bench was sued for a judicial act, and on demurrer one of the objections taken to the declaration was, that it was bad in not alleging malice. Judgment on the demurrer having passed for the defendant, the plaintiff applied for leave to amend his declaration by introducing an allegation of malice and corruption ; but Mr.'Justice Compton replied: "It is a principle of our law that no action will lie against a judge of one of the superior courts for a judicial act, though it be alleged to have been done maliciously and corruptly; therefore the proposed allegation would not make the declaration good. The public are deeply interested in this rule, which indeed exists for their benefit, and was established in order to secure the independence of the judges, and prevent them being harassed by vexatious actions;"—and the leave was refused.[‡]

*350Ill this country the judges of the superior courts of record are only responsible to the people, or the authorities constituted by the people, from whom they receive their commissions, for the manner in which they discharge the great trusts of their office. If in the exercise of the powers with which they are clothed as ministers of justice, they act with partiality, or maliciously, or corruptly, or arbitrarily, or oppressively, they may be called to an account by impeachment and suspended or removed from office. In some States they may be thus suspended or removed without impeachment, by a vote of the two houses of the legislature.

In the case of *Randall* v. Brigham,[*] decided by this court, at the December Term of 1868, we had occasion to consider at some length the liability of judicial officers to answer in a civil action for their judicial acts. In that case the plain*351tiff had been removed by the defendant, who was one of the justices of the Superior Court of Massachusetts, from the bar of that State, and the action was brought for such removal, which was alleged in the declaration to have been made .without lawful authority, and wantonly, arbitrarily, and oppressively. In coirsidering the questions presented the court observed that it was a general principle, applicable to all judicial officers, that they were not liable to a civil action for any judicial act done by them within their jurisdiction; that with reference to judges of limited and inferior authority it had been held that they were protected only when they acted within their jurisdiction; that if

this were the case with respect to them, no such limitation existed with respect to judges of superior or general authority; that they were not liable in civil actions for their judicial acts, even when such acts were in excess of their jurisdiction, "unless, perhaps, when the acts in excess of jurisdiction are done maliciously or corruptly." The qualifying words were inserted upon the suggestion that the previous language laid down the doctrine of judicial exemption from liability to civil actions in terms broader than was necessary for the case under consideration, and that if the language remained unqualified it would require an explanation of some apparently conflicting adjudications found in the reports. They were not intended as an expression of opinion that in the cases supposed such liability would exist, but to. avoid the expression of a contrary doctrine.

In the present case we have looked into the authorities and are clear, from them, as well as from the principle on which any exemption is maintained, that the qualifying words used were not necessary to a correct statement of the law, and that judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even -when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly. A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over *352the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But whore jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend. Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority. But if on the other hand a judge of a criminal court, invested with general criminal jurisdiction over offences committed within a certain district, should hold a particular act to be a public offence, which is not by the law made an offence, and proceed to the arrest and trial of a party charged with such act, or should sentence a party convicted to a greater punishment than that authorized by the law upon its proper construction, no personal liability to civil action for such acts would attach to the judge, although those acts would be in excess of his jurisdiction, or of the jurisdiction of the court held by him, for these are particulars for his .judicial consideration, whenever his general jurisdiction over the subject-matter is invoked. Indeed some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction, or that of the court held by him, or the manner in which the jurisdiction shall be exercised. And the same principle of exemption from liability which obtains for errors committed in the ordinary prosecution of a suit where there is jurisdiction of both subject and person, applies in cases of this kind, and for the same reasons.

The distinction here made between acts done in excess *353of jurisdiction and acts where no jurisdiction whatever over the subject-matter exists, was taken by the Court of King's Bench, in *Ackerley* v. *Parkinson.** In that case an action was brought against the vicar-general of the Bishop of Chester and his surrogate, who held the consistorial and episcopal court of the bishop, for excommunicating the plaintiff with the greater excommunication for contumacy, in not taking upon himself the administration of an intestate's effects, to whom the plaintiff was next of kin, the citation issued to him being void, and having been so adjudged. The question presented was, whether under these circumstances the action would lie. • The citation being void, the plaintiff had not been legally brought before the court, and the subsequent proceedings were set aside, ou appeal, on that ground. Lord Ellenborough observed that it was his opinion that the action was not maintainable if the ecclesiastical court had a general jurisdiction over the subject-matter, although the citation was a nullity, and said, that " no authority had been cited to show that the judge would be liable to an action where he has jurisdiction, but has proceeded erroneously, or, as it is termed, *inverso ordine.*" Mr. Justice Blanc said there was " a material distinction between a case where a party comes to an erroneous conclusion in a matter over which he has jurisdiction and a case where he acts wholly without jurisdiction and held that where the subject-matter was within the jurisdiction of the judge, and the conclusion was erroneous, although the party should by reason of the error be entitled to have the conclusion set aside, and to be restored to his former rights, yet he was not entitled to claim compensation in damages for the injury done by such erroneous conclusion, as if the court had proceeded without any jurisdiction.†

*354The exemption of judges of the superior courts of record from liability to civil suit for their judicial acts existing when there is jurisdiction of the subject-matter, though irregularity and error attend the exercise of the jurisdiction, the exemption cannot be affected by any consideration of the motives with which the acts are done. The allegation of malicious or corrupt motives could always be made, and if the motives could be inquired into judges would be subjected to the same vexatious litigation upon such allegations, whether the motives had or had not any real existence. Against the consequences of their erroneous or irregular action, from whatever motives proceeding, the law has provided for private parties numerous remedies, and to those remedies they must, in such cases, resort. But for malice or corruption in their action whilst exercising their judicial functions within the general scope of their jurisdiction, the judges of these courts can only be reached by public prosecution in the form of impeachment, or in such other form as may be specially prescribed.

If, now, we apply the principle thus stated, thé question presented in this case is one of easy solution. The Criminal Court of the District, as a court of general criminal jurisdiction, possessed the power to strike the name of the plaintiff from its rolls as a practicing attorney. This power of removal from the bar is possessed by all courts which have authority to admit attorneys to practice. It is a power which should only be exercised for the most weighty reasons, such" as would render the continuance of the attorney in practice incompatible with a proper respect of the court for itself, or a proper regard for the integrity of the profession. And, except where matters occurring in open court, in presence of the judges, constitute the grounds of its action, the power of the court should never be exercised without notice to the offending party of the grounds of complaint against him, and affording him ample opportunity of explanation and

defence. This is a rule of natural justice, and is as applicable to cases where a proceeding is taken to reach the right of an attorney to practice his profession as *355it is when the proceeding is taken to reach his real or personal property. And even where the matters constituting the grouuds of complaint have occurred in open court, under the personal observation of the judges, the attorney should ordinarily be heard before the order of removal is made, for those matters may not be inconsistent with the absence of improper motives on his part, or may be susceptible of such explanation as would mitigate their offensive character, or he may be ready to make all proper reparation and apology. Admission as an attorney is not obtained without years of labor and study. The office which the party thus acquires is one of value, and often becomes the source of great honor and emolument to its possessor. To most persons who enter the profession, it is the means of support to themselves and their families. To deprive one of au office of this character would often be to decree poverty to himself and destitution to his family. A removal from the bar should therefore never be decreed where any punishment less severe—such as reprimand, temporary suspension, or fine—would accomplish the end desired.

But on the other hand the obligation which attorneys impliedly assume, if they do not by express declaration take upon themselves, when they are admitted to the bar, is not merely to be obedient to the Constitution and laws, but to maintain at all times the respect due to courts of justice and judicial officers. This obligation is not discharged by merely observing the rules of courteous demeanor in open court, but it includes abstaining out of court from all insulting language and offensive conduct toward the judges personally for their judicial acts. "In matters collateral to official duty," said Chief Justice Gibsou in the case of *Austin and* others, " the judge is on a level with the members of the bar as he is with his fellow-citizens, his title to distinction and respect resting on no other foundation than his virtues and qualities as a man. But it is nevertheless evident that professional fidelity may be violated by acts which fall without the lines of professional functions, and which may have been performed out of the pale of the court. Such would be the *356consequences of beating or insulting a judge in the street for a judgment in court. No one would pretend that an attempt to control the deliberation of the bench, by the apprehension of violence, and subject the judges to the power of those who are, or ought to be, subordinate to them, is compatible with professional duty, or the judicial independence so indispensable to the administration of justice. And an enormity of the sort, practiced but on a single judge, would be an offence as much against the court, which is bound to protect all its members, as if it had been repeated on the person of each of them, because the consequences to suitors and the public would be the same; and whatever may be thought in such a case of the power to punish for contempt, there can be no doubt of the existence of a power to strike the offending attorney from the roll."

The order of removal complained of in this case, recites that the plaintiff threatened the presiding justice of the Criminal Court, as he was descending from the bench, with personal chastisement for alleged conduct of the judge during the progress of a criminal trial then pending.

The matters thus recited are stated as the grounds for the exercise of the power possessed by the court to strike the name of the plaintiff from the roll of attorneys practicing therein. It is not necessary for us to determine in this case whether under any circumstances the verity of this record can be impeached. It is

sufficient to observe that it cannot be impeached in this action or in any civil action against the defendant. And if tbe matters recited are taken as true there was ample ground for the action of the court. A greater indignity could hardly be offered to a judge than to threaten him with personal chastisement for his conduct ou the trial of a cause. A judge who should pass over in silence an offence of such gravity would soon find himself a subject of pity rather than of respect.

The Criminal Court of the District erred in not citing the plaintiff, before making the order striking his name from the roll of its attorneys, to show cause why such order should not be made for the offensive language and conduct stated, *357and affording him opportunity for explanation, or defence, or apology. But this erroneous manner in which its jurisdiction was exercised, however it may have affected the validity of the act, did not make the act any less a judicial act; nor did it render the defendant liable to answer in damages for it, at the suit of the plaintiff, as though the court had proceeded without having any jurisdictiop whatever over its attorneys.

We find no error in the rulings of the court below, and its judgment must, therefore, be affirmed, and it is so ordered.

Judgment affirmed.

Ex parte Bradley, 7 Wallace, 364.

16 Stat. at Large, 160.

Justice Muyne, in Taaffe *v.* Downes, reported in a note to 3d Moore's Privy Council, 41.

Yates *v.* Lansing, 5 Johnson, 291.

12 Coke, 25.

2 Cushing, 68.

3 Best & Smith, 576.

In Scott v. Stansfield (3 Law Beports, Exchequer, 220), a judge of a county court was sued for slander, and he put in a plea that the words complained of were spoken by him in his capacity as such judge, while sitting in his court, and trying a cause in which the plaintiff was defendant. To this plea a replication was filed, that the words were spoken falsely and ma*350liciously, and without any reasonable, probable, or justifiable cause, and without any foundation whatever, and not *bond fide* in the discharge of the defendant's duty as judge, and were wholly irrelevant to the matter before him. To the replication the defendantdemurred; and the Court of Exchequer held the demurrer well taken. " I am of opinion," said the Chief Baron, "that our judgment must be for the defendant. The question raised upon this record is whether an action is maintainable against the judge of a county court, which is a court of record, for words spoken by him in his judicial character, and in the exercise of his functions as judge in the court over which he presides, where such words would ns against an ordinary individual constitute a cause of action, and where they are alleged to have, been spoken maliciously and without probable cause, and to have been irrelevant to the matter before him. The question arises, perhaps, for the first time, with reference to a county court judge, but-a series of decisions uniformly to the same effect, extending from the time of Lord Coke to the present time, establish the general proposition that no action will lie against a judge for any acts done or words spoken in his judicial

capacity in a court of justice. This doctrine has been applied not only to the superior courts, but to the court of a coroner, and to a court martial, which is not a court of record. It is essential in all courts that the judges who are appointed to administer the law should be permitted to administer it under the protection of the law, independently and freely, without favor and without fear. *This provision of the law is not for the protection or benefit of a malicious or corrupt judge, hut for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence, and without fear of consequences.* ' '

7 Wallace, 623.

3 Maule & Selwyn, 411.

Calder *v.* Halket, decided by the Judicial Committee of the Privy Council (3 Moore's Privy Council Bep. 28), goes to the extent of holding that an action will not lie even against a judge of an inferior court of limited jurisdiction, for his judicial acts, when acting withóut jurisdiction, unless he knew or had the means of knowing of the defect of jurisdiction, and that it lies upon the plaintiff in every such case to prove that fact.

# DISSENTING OPINION

**Mr. Justice DAYIS, with whom concurred Mr. Justice CLIFFORD,**

dissenting.

I agree that judicial officers are exempt from responsibility in a civil action for all their judicial acts in respect to matters of controversy within their jurisdiction. I agree, further, that judges of superior or general authority are equally exempt from liability, even when they have exceeded their jurisdiction, unless the acts complained of were done maliciously or corruptly. But I dissent from the rule laid down by the majority of the court, that a judge is exempt from liability in a case like the present, where it is alleged not only that his proceeding was in excess of jurisdiction, but that he acted maliciously and corruptly. If he did so, he is, in my opinion, subject to suit the same as a private person would be under like circumstances.

I also dissent from the opinion of the majority of the court for the reason that it discusses the merits of the controversy, which, in the state of the record, I do not consider open for examination.

**Case-law data current through December 31, 2025. Source: CourtListener bulk data (https://www.courtlistener.com/help/api/bulk-data/).**